UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff/Respondent,<br><br>v.<br><br>DENNIS BRUCE HAMMONS,<br><br>                    Defendant/Movant. | Case No. 1:10-cv-00299-BLW<br>            1:06-cr-00126-BLW<br><br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Pending before the Court is Dennis Bruce Hammons' ("Hammons") Motion to Vacate Pursuant to 28 U.S.C. § 2255 (Dkt. 1).  Having reviewed the Motion as well as the Response (Dkt. 5), Reply (Dkt. 6), and the underlying criminal record, the Court enters the following Order denying the Motion.

**BACKGROUND**

**1.     Indictment and Plea**

Hammons was one of fifteen individuals charged in an Indictment filed September 13, 2006 in a case involving an approximately thirty-year drug and money laundering conspiracy.  Relevant to the pending Motion, he was charged in the Second Superseding

MEMORANDUM DECISION AND ORDER - 1

Indictment with continuing criminal enterprise in violation of 21 U.S.C. § 848 (Count 1),

conspiracy to manufacture/distribute/possess controlled substances in violation of 21

U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 2), conspiracy to launder money in

violation of 18 U.S.C. 1956(h) (Count 3), conspiracy to structure transactions and launder

money in violation of 18 U.S.C. § 371 (Count 4), conspiracy to travel and transport in aid

of racketeering enterprises in violation of 18 U.S.C. §§ 371, 1952 (also known as an

"ITAR" offense) (Count 5), and several related forfeiture counts (Counts 6-10).  *See*

*Second Superseding Indictment*, Dkt. 425 (in criminal case).[1]  Hammons was arrested and

appeared on February 4, 2008, in the District of Oregon.  *Arrest Warrant*, Dkt. 446.  He

was arraigned on the Second Superseding Indictment in the District of Idaho on February

19, 2008, before Magistrate Judge Mikel H. Williams, waived a detention hearing, and

remained in custody throughout these proceedings.  *Min. Entry*, Dkt. 452; *Waiver*, Dkt.

456.

　　Appointed counsel, C. Tom Arkoosh, aggressively defended Hammons by filing a

number of pre-trial motions and joining in the pre-trial motions of co-Defendants Gregory

Frank Sperow and Lawrence Weitzman.  *See Mot. in Limine*, Dkt. 538; *Mot. to Change*

*Venue*, Dkt. 539; *Mot. to Dismiss on Speedy Trial Grounds*, Dkt. 540; *Mot. to Sever on*

*Basis of Duplicity*, Dkt. 541; *Mot. to Sever on Basis of Multiplicity*, Dkt. 542; *Mot. to*

*Dismiss for Vindictive Prosecution*, Dkt. 544; and *Mot. for Joinder in Motions of Sperow*

---

[1]  All further docket numbers shall refer to entries in the underlying criminal case, Case No.
1:06-cv-00126-BLW, unless otherwise noted.

**MEMORANDUM DECISION AND ORDER - 2**

*and Weitzman*, Dkt. 545 (nine motions including five motions to dismiss for vindictive prosecution, pre-indictment delay, speedy trial violation, improper venue; three motions in limine; and a motion to sever).  Hearing on the motions was set for May 27, 2008. *Order*, Dkt. 570.

Throughout the briefing on the motions, Hammons, though counsel, engaged in plea negotiations with the Government.  *See, e.g., Government's Fourth Request for Additional Time to Respond to Pretrial Motions*, Dkt. 583 (noting that there had been ongoing negotiations between the parties that could resolve the matter prior to trial or narrow the scope of motions to be resolved).

On May 23, 2008, prior to the hearing on the motions, the Government filed a signed Plea Agreement pursuant to which Hammons agreed to plead guilty to Count Five of the Second Superseding Indictment, the ITAR charge, and to the Information in Case No. 1:08-cr-00038-BLW charging him with Making False Statements to Obtain a Fraudulent Passport, in return for dismissal of the remaining counts of the Second Superseding Indictment.  *Plea Agreement*, Dkt. 596.  *See also Corrected Plea Agreement*, Dkt. 695 (docketed at a later date to include missing page).[2]

In the Factual Basis portion of the Plea Agreement, Hammons agreed that between October 2000 and June 20, 2005, he "conspired with [co-Defendant] Kent Jones and

---

[2]  The Court subsequently denied all of the motions in which Hammons had joined with the exception of Sperow's motion to sever from the then remaining co-Defendant Weitzman on which it reserved decision.  *Mem. Dec. and Order*, Dkt. 616.

**MEMORANDUM DECISION AND ORDER - 3**

others to distribute the proceeds of the drug trafficking enterprise, which conspiracy resulted in drugs (sic) proceeds being distributed in interstate commerce to Hammons, or on behalf of Hammons." *Plea Agreement*, ¶ III.C.  He also agreed that he executed a passport application in the name of his deceased brother.  *Id*.  As relevant here, he agreed that the maximum term of imprisonment on Count Five was imprisonment for a term of not more than five years and that the maximum term of imprisonment on the fraudulent passport charge was likewise not more than five years.  *Id*., IV.A.  On June 10, 2008, Hammons entered his plea of guilty before Magistrate Judge Candy W. Dale.  *Min. Entry*, Dkt. 622.  *See also Plea Hearing Tr.*, Dkt. 708.

## 2.     Sentencing

The road from plea to sentencing was not an easy one.  Defense counsel's vigorous objections to the Presentence Report led to protracted litigation including evidentiary hearings in the sentencing phase which ultimately concluded over one year after Hammons entered his plea.  The Presentence Report grouped the ITAR and passport offenses and applied the drug guideline, § 2D1.1.  The resulting offense level was 27 which, with a criminal history category of IV (including two prior federal drug convictions), yielded a guideline range of 100 to 120 months.  Hammons objected to the offense calculation contending that the appropriate applicable guideline was the money laundering guideline, § 2S1.1.  The Probation Officer disagreed and submitted the final Presentence Report to the Court with an offense level calculation based on § 2D1.1.

**MEMORANDUM DECISION AND ORDER - 4**

At the initial sentencing hearing date of October 17, 2008, Hammons continued his guideline argument, the Court listened to the tape of the plea hearing, decided that there was not a meeting of the minds, and allowed the parties to confer about how to proceed. The Court gave the Government the option of proceeding under § 2S1.1 or agreeing to allow Hammons to withdraw his plea. The Government indicated its agreement to proceed under § 2S1.1, but requested additional time to reassess the evidence to be presented. *Min. Entry*, Dkt. 694. The Government also indicated that it questioned whether Hammons would still be entitled to an adjustment for acceptance of responsibility. *Id*. The Court continued the hearing and directed counsel to file simultaneous briefs on the various sentencing issues. *Id*. Further briefing was allowed after the preparation of the plea hearing transcript. *See Briefs*, Dkts. 700, 701, 702, 711, 712.

On December 15, 2008, after reviewing the Plea Hearing transcript and the briefing, the Court found that there was no ambiguity in the Plea Agreement, that Hammons clearly pleaded guilty to distributing the proceeds of the drug trafficking enterprise, and that he did not, therefore, have an unqualified right to sentencing under § 2S1.1. *Order*, Dkt. 756. The Court continued:

> However, out of an abundance of caution, recognizing that Defendant's liberty is at stake, the Court finds that there was no meeting of the minds at the time the parties entered the Plea Agreement. Therefore, Defendant shall have two options. First, he may withdraw from the Plea Agreement. Second, he may waive his right to contest the validity of his

**MEMORANDUM DECISION AND ORDER - 5**

> plea and proceed with sentencing pursuant to § 2S1.1 with the
> understanding that the Government may present evidence on
> both the amount and the acceptance of responsibility issues.

*Order* at 12, Dkt. 756.

Regarding the amount issue, the Government advised that it would seek to prove that Hammons had received $420,000 in drug proceeds whereas Hammons advised that he would admit to having received only $2,000.  This difference was significant given that it resulted in a 14-level difference in the total offense level under the sentencing guidelines.

Defendant opted to proceed with sentencing under § 2S1.1.  *Notice to Proceed to Sentencing*, Dkt. 757.  Sentencing was set for April 17, 2009.  *Order*, Dkt. 762.  Prior to sentencing, each party filed additional argument.  Dkts. 787; 791; 792.  At the hearing, the Court heard testimony from Government witnesses Ron Nelson, Gregory Gleason, and Forest Gerald McDonald.  *Min.*, Dkt. 795.  The hearing was to continue on May 15, 2009.  However, the Government filed an unopposed motion for a 30-day continuance to interview a new witness or witnesses which the Court granted.  Dkt. 821; 823.  The matter was reset for June 23, 2009.  Dkt. 831.

On June 23, 2009, the Court once again convened the sentencing hearing and received further testimony from Forest Gerald McDonald.  *Minutes*, Dkt. 866.  However, the matter was continued yet again to allow for video conference appearance of a defense witness and a Government witness.  *Minutes*, Dkt. 866.  The parties filed additional

**MEMORANDUM DECISION AND ORDER - 6**

briefing/sentencing memoranda in advance of the newly set date of July 7, 2009, maintaining their respective positions regarding the amount.  Dkts. 882, 885.  The Court heard testimony by video conference of the two witnesses on July 7.  *Minutes*, Dkt. 887. Sentencing concluded on July 10, 2009.  *Minutes*, Dkt. 891.

Following the vigorously contested evidentiary hearing that occurred over a period of months, the Court sentenced Hammons to a term of 60 months in Case No. 1:06-cr-00126-BLW for the ITAR offense, in Case No. 1:08-CR-138-BLW to a term of 36 months for making false statements to obtain a fraudulent passport, and in Case No. 1:08-CR-319-BLW to a term of nine months for revocation of his term of supervised release in an unrelated federal case, all terms to run consecutively for a total sentence of 96 months. Respectively, *Judgment*, Dkt. 892; *Judgment*, Dkt. 27; and *Judgment*, Dkt. 19.

On June 14, 2010, nearly a year after sentencing, Hammons timely filed identical § 2255 Motions in each of the criminal cases alleging ineffective assistance of counsel for failure to file a notice of appeal of the sentence in the drug case.  The Court dismissed the § 2255 Motions filed in the false statements case and the revocation case since the issue Hammons indicated he wanted to appeal related only to the portion of the sentence attributable to the ITAR charge.  *Mem. Dec. and Order*, Dkt. 4 in each of Case Nos. 1:10-cv-00302-BLW, and 1:10-cv-303-BLW.

## REVIEW OF § 2255 MOTION

In his § 2255 Motion, Hammons alleges ineffective assistance of counsel for

failure to file a notice of appeal of the Court's determination of the dollar amount for which he was responsible in connection with the ITAR charge despite his request that counsel do so.  He states that "[a]t sentencing, the sentencing Court gave me the option to file a Notice of Appeal, despite my conditional waiver of appeal, to appeal the amount of money that the government alleged I received versus the amount of money I claimed I was responsible for."  *§ 2255 Motion*, at 5.  In his supporting Memorandum, he states that as part of the Plea Agreement, he "agreed to waive some of his appellate rights. *Mem.* at 2, Dkt. 1-1.  He further correctly states that he waived the right to contest the validity of his guilty plea and proceed to sentencing.  *Id*. at 3.  He contends that he should have only been sentenced based on the $2,000 he admitted to receiving rather than on the amount of $420,000.  *Id.*

In arguing that his attorney was ineffective for not filing a notice of appeal, Hammons states that "[w]hile the plea agreement limited the right to appeal issues that are irrelevant to this proceeding, [he] still preserved the right to file one direct appeal and the right to file one habeas petition under 28 U.S.C. § 2255."  *Id*. at 6.  He also claims that "counsel did not explain to [him] that regardless of his plea waiver he still preserved his right to appeal certain meritorious issues on appeal" and that "the Court gave [him] the right to appeal his sentence."  *Id*. (quoting language from the Sentencing Hearing Transcript at page 53, ¶¶ 6-20).

Hammons "concedes that he waived most of his appellate rights in the plea

**MEMORANDUM DECISION AND ORDER - 8**

agreement," but contends that "this waiver assumed that counsel would adequately perform his job throughout the proceedings." *Id*. at 8.  In reliance on *United States v. Raynor*, 989 F.Supp. 43 (D.D.C. 1997), he further states that he "did not waive his right to be sentenced correctly" and that "[u]ntil a sentence is imposed, a defendant cannot possibly know what it is he or she is waiving." *Id*.  He claims prejudice in that he received a "much greater sentence than that advised by his attorney" and that "said sentence was then unappealable." *Id*.  He requests that his conviction and sentence be vacated or in the alternative that his appellate rights be restored.  *Id*.

In response, the Government contends that the waiver in the Plea Agreement was valid.  It submitted an affidavit from Mr. Arkoosh stating that he had discussed the effect of the appellate waiver with Hammons and that Hammons ultimately directed him not to appeal because he was concerned that he could receive a harsher sentence if re-sentenced.  The Government also submitted a copy of Mr. Arkoosh's letter to Hammons indicating that he had discussed with Hammons the "various limitations in the Plea Agreement to appeal" and the possible adverse consequences of appealing.  The Government concludes that even if Mr. Arkoosh's performance had been deficient in not filing a notice of appeal, Hammons has failed to demonstrate prejudice in that he failed to demonstrate that there is a reasonable probability that he would have timely appealed if counsel had consulted with him.

In his Affidavit, Mr. Arkoosh states that in addition to discussing the appeal

**MEMORANDUM DECISION AND ORDER - 9**

waiver language when reviewing the Plea Agreement, he met with Hammons on July 4, 6, 7, 8, 9, and 10, 2009 preparing for sentencing, discussing his options for appeal, and discussing how the Court and the AUSA might respond to an appeal.[3]  *Arkoosh Aff.*, ¶¶ 1-8.  He also referred to the July 16, 2009 letter to Hammons memorializing the conversations and stated that Hammons expressed his concerns that if he were to be resentenced he would get a harsher sentence.  *Id.* at ¶ 10.  Finally, Mr. Arkoosh states that after sentencing, Hammons directed him not to file an appeal.  He never heard otherwise until the § 2255 was filed.  *Id.*

In his Reply, Hammons claims "it should not matter that [he] waived his right to appeal his sentence and conviction as part of his plea agreement."  *Reply* at 2.  He notes that the waiver must be knowing and voluntary and that it can be invalidated based on ineffective assistance of counsel.  He argues that waiver of appellate review of his sentence "is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations."  *Id.* at 3.  However, none of the cases he cited stand for that proposition.

In a similar vein, in reliance on *United States v. Raynor*, 989 F. Supp. 43 (D.D.C. 1997), Hammons argues that plea agreements are unfair and should not be upheld as to a yet to be imposed sentence.  Finally, Hammons concedes that he waived his appeallate

---

[3]  The Plea Agreement provided, *inter alia*, that in the event of a breach of any promise in the Plea Agreement, "the Government is relieved of any obligation not to prosecute defendant on other charges, including any charges dismissed as part of this Plea Agreement."  *Plea Agreement*, ¶ IX.A.

**MEMORANDUM DECISION AND ORDER - 10**

rights in the Plea Agreement but states that the waiver "assumed that counsel would adequately perform his job throughout the proceedings." *Id*. He relied on counsel to make sure he was not erroneously sentenced, and he did not waive his right to be sentenced correctly. *Id*. at 4.

Specifically addressing Mr. Arkoosh's Affidavit, Hammons states that the meetings of July 4, 7, 8, and 9, in which Mr. Arkoosh represents that he discussed the appeal waiver, were primarily spent preparing for sentencing. He states that discussions about the appeal did not take place until July 10 – after sentencing – at which time he recalls discussing with counsel his desire to appeal the court's decision regarding the amount of money attributed to him. *Id*. at 4. They also discussed an appeal the following day when counsel visited him at the Ada County Jail. *Id*. at 4-5. While admitting that he may have discussed appeal options with counsel "briefly and at different times, Hammons claims that the discussions never amounted to the "significant amount of time" counsel claims. *Id*. at 5. Hammons posits that if he had indicated "some sort of unhappiness," even if the appeal discussions had been significant, counsel "should have been competent enough to file a Notice of Appeal on [his] behalf." *Id*. at 5. Finally, he states that he "did not merely demonstrate to counsel his interest in an appeal, he explicitly told his lawyer he wanted to appeal and his lawyer refused to do so." *Id*. 6.

In his supporting Affidavit, Hammons states that it was only after sentencing that he and counsel discussed an appeal:

**MEMORANDUM DECISION AND ORDER - 11**

It was only after I had been sentenced, on July 10, 2009, that my attorney came to the holding cell and then we discussed an appeal.  It was at that time that I told him that I wanted to argue and appeal the judge's decision concerning the amount of money attributed to me.  My attorney then came and saw me the following day at the Ada County Jail and we talked about the appeal.  He told me I could not file an appeal because I waived my right to appeal, but I told him to file one anyway.

I also talked to another attorney about filing an appeal on my behalf.  But, after the second attorney contacted Mr. Arkoosh about my appeal, Mr. Arkoosh told him that I had waived my appeal rights.

*Hammons Aff.*, Dkt. 6-1.

Notably absent from Hammons' Affidavit is any reference to Mr. Arkoosh's letter. Hammons does not deny having received it or state that after he received the letter he directed Mr. Arkoosh to file a notice of appeal.

## STANDARDS OF LAW

**1.      28 U.S.C. § 2255**

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after

consideration of the pleadings and an expanded record.  *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then determines under Rule 8 whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record.  *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

## 2.    Ineffective Assistance of Counsel

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice.  *See Strickland v. Washington*, 466 U. S. 668 (1984).  Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel.  *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance."  *Id*. at 689.  This is so because for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence. . . ."  *Id.*  For the court, "it is all

**MEMORANDUM DECISION AND ORDER - 14**

too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (discussing *Strickland*).

In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The *Strickland* standard is "highly demanding." *Kimmelman v. Morrision*, 477 U.S. 365, 381-82; 386 (noting that the court should "assess counsel's overall performance throughout the case" when evaluating whether his assistance was reasonable).

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687).

Ineffective assistance of counsel claims for failure to file a notice of appeal are evaluated under the *Strickland* test. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Where a defendant specifically instructs counsel to file a notice of appeal, failure to do so constitutes ineffective assistance of counsel, and the lost chance to appeal constitutes prejudice. *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1196-98 (9th Cir. 2005). However, where a defendant does not instruct counsel to either file or not file a notice of appeal, the court must first determine whether counsel consulted with the defendant

**MEMORANDUM DECISION AND ORDER - 15**

regarding an appeal.  *Flores-Ortega*, 528 U.S. at 477-78  (2000).  If counsel has not done

so, then the court must determine whether that failure to consult in and of itself

constituted deficient performance.  *Id*.

**MEMORANDUM DECISION AND ORDER - 16**

[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  In making this determination, courts must take into account all the information counsel knew or should have known.

*Id*. at 480.

If counsel fails to consult with a defendant about an appeal in circumstances giving rise to the duty to consult, Defendant must demonstrate that he would have timely appealed but for counsel's failure to consult.  *Id*. at 484.  Evidence that a defendant sufficiently demonstrated an interest in appealing is not determinative that he would have instructed counsel to file a notice of appeal after receiving reasonable advice.  *Id.* at 486.

3.    **Waiver**

"[P]ublic policy strongly supports plea agreements," even those waiving the right to appeal.  *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990).  "[P]erhaps the most important benefit of plea bargaining[] is the finality that results."  *Id*. at 322.

"A defendant's waiver of his appellate rights is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made."  *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947 (9th Cir. 2007) (en banc).  General waivers of appeal in a plea agreement are read broadly

**MEMORANDUM DECISION AND ORDER - 17**

and include appeals of matters other than the conviction itself.  *United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir. 2011).

## DISCUSSION

The sole issue before the Court is whether counsel provided ineffective assistance by failing to file a notice of appeal.  In addressing that issue, whether or not there was an appeal waiver is of limited relevance.   However, other issues have been addressed in the briefing that prompt comment before addressing the merits of Hammons' claim.  Although those issues are not relevant to the sole issue before the Court, they reflect a misunderstanding or misreading of both the record and the law by Hammons.  The Court questions whether he would have filed the § 2255 Motion despite his admitted waiver absent his misperceptions.

**1.     Preliminary Matters**

**A.     Alleged Conditional Waiver**

As stated above, Hammons alleges in his § 2255 Motion that "[a]t sentencing, the sentencing Court gave me the option to file a Notice of Appeal, despite my conditional waiver of appeal, to appeal the amount of money that the government alleged I received versus the amount of money I claimed I was responsible for."  *§ 2255 Motion* at 5.  He also claimed that "counsel did not explain to [him] that regardless of his plea waiver he still preserved his right to appeal certain meritorious issues on appeal."

The waiver of appeal was not conditional and did not give him the right to raise

**MEMORANDUM DECISION AND ORDER - 18**

"certain meritorious issues" on appeal.  The clear language of the Plea Agreement stated:

> A.    In exchange for the Government's concessions in this Plea Agreement, and except as provided in subparagraph B, defendant waives to the full extent of the law any right to appeal or to collaterally attack the conviction, entry of judgment, sentence (including any restitution or forfeiture order), or entry of sentence.  *This waiver includes appeals and collateral attacks based on any source whatever*, including but not limited to:
>
> > 1.    28 U.S.C. § 1291 (judgment and conviction);
> >
> > 2.    18 U.S.C. §§ 3553 and 3742(a), and 28 U.S.C. § 1291 (sentencing);
> >
> > 3.    28 U.S.C. §§ 2241-2255 (habeas corpus).
>
> The defendant acknowledges and agrees that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his conviction or sentence in this case.  Further, if the defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, defendant agrees that this case shall, upon the motion of the Government, be remanded to the district court to determine whether defendant is in breach of this agreement and, if so, to permit the Government to withdraw from the Plea Agreement.
>
> If the defendant believes the Government has not fulfilled its obligations under this agreement, defendant will object at the time of sentencing; otherwise the objection will be deemed waived.
>
> B.    Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal *if the sentence imposed exceeds the statutory maximum* as determined by the district court; . . . .

*Plea Agreement* at 5-6 (emphasis added), Dkt. 695.

**MEMORANDUM DECISION AND ORDER - 19**

The waiver language is "about as solid a waiver of the right to appeal as can be imagined."  *See United States v. Sandoval-Lopez*, 409 F.3d 1193, 1195 (9th Cir. 2005) (addressing a plea agreement that stated "[t]he defendant agrees not to appeal his convictions or any sentences imposed in accordance with the plea agreement" coupled with the plea colloquy).  Here, the only appealable issue under the Plea Agreement was a sentenced imposed in excess of the statutory maximum.  Hammons was not sentenced above the statutory maximum.  The Plea Agreement did not give him the right to appeal "certain meritorious issues" other than a sentence above the statutory maximum.

## B.  Court's Comments Regarding Appeal Rights

As also stated above, Hammons alleges that "the Court gave [him] the right to appeal his sentence."  *Mem.* at 3 (quoting language from the Sentencing Hearing Transcript at page 53, ll. 6-20).

The Court's sole comments on the right to appeal were:

> Typically a defendant has the right to appeal their (sic) conviction or sentence, however your plea agreement in [Case No.] 06-126 and [Case No.] 08-138 contains a provision which waives some or all of those rights with regard to appeals from those convictions.  *Such waivers are generally enforceable, but you may argue that in your case they are not.*
>
> If you wish to pursue an appeal, either an appeal from the Court decision on the supervised release violation in [Case No.] 08-319 or an appeal under [Case No.] 06-126 or [Case No.] 08-138, to either challenge the waiver of your appeal rights or to appeal an issue not waived by your plea agreement in those two cases, you must file an appeal within 10 days from today within which – or that right may be waived.  So

**MEMORANDUM DECISION AND ORDER - 20**

it's important if you're going to pursue an appeal you must do
so within 10 days.

*Sent. Tr.* at 53 (emphasis added), Dkt. 924.

Nowhere did the Court give Hammons the right to appeal his sentence or its

findings regarding the amount.  It essentially told Hammons that he could either argue

that his waiver was unenforceable or appeal an above the statutory maximum sentence.

These general comments of the Court cannot be construed to invalidate the waiver in the

Plea Agreement.  *See United States v.  Arias-Espinosa*, 704 F.3d 616, 619 (9th Cir. 2012)

(court's statement that defendant "may have a right to appeal" did not invalidate waiver).

*See also United States v. Watson*, 582 F.3d 974, 987-88 (9th Cir. 2009) (same regarding

"ambivalent comments" by the court that "maybe" the defendant's attorney could find a

way to appeal a supervised release condition to challenge its constitutionality); *United*

*States v. Aquilar-Muniz*, 156 F.3d 974, 977 (9th Cir. 1998) (same regarding court's

comments that although waivers are generally enforceable "if you believe the waiver is

unenforceable, you can present that theory to the appellate court"); *United States v.*

*Schuman*, 127 F.3d 815, 817 (9th Cir. 1997) (same regarding court's comments that

"[i]t's up to the Ninth Circuit to decide whether under the circumstances [defendant] lost

his right of appeal.").

**C.    Argument that Waiver Does Not Pertain to Sentencing Matters**

Hammons claims that he "did not waive his right to be sentenced correctly."  *Mem.*

at 8.  He continues, "[u]ntil a sentence is imposed, a defendant cannot possibly know

**MEMORANDUM DECISION AND ORDER - 21**

what it is he or she is waiving." *Id*. (citing *United States v. Raynor*, 989 F. Supp. 43 (D.D.C. 1997)).  In his Reply, he continues this *Raynor* argument.  The court in *Raynor* opined that "[a] defendant cannot knowingly, intelligently and voluntarily give up the right to appeal a sentence that has not yet been imposed and about which the defendant has no knowledge as to what will occur at the time of sentencing. This Court therefore will accept no plea agreements containing waiver provisions of this kind." *Raynor*, 989 F.Supp. at *49.

The Court can find no Circuit Court of Appeals that has adopted the reasoning of the district judge in *Raynor*.  *See, e.g., United States v. Hahn*, 359 F.3d 1315, 1326 (10th Cir. 2004) (rejecting *Raynor*-based argument that "a defendant can never knowingly and voluntarily waive his appellate rights because he cannot possibly know in advance what errors a district court might make in the process of arriving at an appropriate sentence.") *See also United States v. Teeter*, 257 F.3d 14, 23 and n.6 (1st Cir. 2001) (noting and following the "collective wisdom" of the then nine circuit courts passing on the validity of presentence waivers of appellate rights although noting *Raynor* and other individual judges who "have demurred"); *United States v. Khattak*, 273 F.3d 557, 560-62 (3d Cir. 2001) (same citing decisions of ten other courts of appeal).  More importantly relevant here, as recognized in *Teeter* and *Khattack*, the Ninth Circuit recognizes waivers in the sentencing context as long as the waiver was knowing and voluntary.  *See, e.g., United States v. Nguyen*, 235 F.3d 1179, 1182-83 (9th Cir. 2000), *abrogated on other grounds by*

**MEMORANDUM DECISION AND ORDER - 22**

*United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir. 2011).  In his § 2255 Motion,

Hammons did not claim that his waiver was not knowing and voluntary.

### D.     Claim Raised in Reply

To the extent that Hammons is claiming in his Reply that his waiver was not

knowing and voluntary, that claim must be dismissed.  Issues raised for the first time in a

reply are not cognizable.  *See Detrich v. Ryan*, __ F.3d __, 2013 WL 4712729, at *28 n.6

(9th Cir. Sept. 3, 2013) (en banc) (citing *United States v. Anekwu*, 695 F.3d 967, 958 (9th

Cir. 2012)).  *See also United States v. Joiner*, 847 F. Supp. 604, 606-07 (N.D.Ill. 1994)

(refusing to consider arguments raised for first time in reply in a § 2255 proceeding);

*Wilson v. United States*, 149 F.Supp.2d 1045 (N.D.Ind. 2001) (same).  The purpose of a

reply is to address arguments raised in the answer or response rather than to add new

claims against the opposing party.  Indeed, a reply is not even mentioned among the

documents to be reviewed when a court is making a decision as to whether an evidentiary

hearing on a § 2255 motion is warranted.  *See* Rule 8 of the Rules Governing Section

2255 Proceedings.[4]

---

[4]  The claim could not even be raised by amendment because it would be time-barred.  The
Supreme Court has held that an amendment does not relate back to the date of the initial pleading and
therefore defeat the one-year statute of limitations "when it asserts a new ground for relief supported by
facts that differ in both time and type from those the original pleading set forth."  *Mayle v. Felix*, 545
U.S. 644, 650 (2005) (finding claim that admission of damaging statements made in response to coercive
police tactics violated his Fifth Amendment rights did not relate back to initial claim that the admission
of videotaped testimony of a prosecution witness violated his rights under the Sixth Amendment
Confrontation Clause).  Whether or not counsel failed to file a notice of appeal despite his client's
alleged directive to do so after sentencing is clearly removed temporally and substantively from counsel's
advice and a defendant's state of mind at the time of the change of plea hearing.

**MEMORANDUM DECISION AND ORDER - 23**

**2.      Merits of § 2255 Motion**

On the sole issue raised in the § 2255 Motion, the Court can proceed under either of two theories and reach the same conclusion based on the record – that Hammons' Motion should be dismissed.

The Court has before it counsel's and Hammons' affidavits. There is no real factual dispute.  Hammons disputes the *level* of discussion about the merits and consequences of appealing, but he does not dispute that there was at least *some* discussion, particularly on the day of sentencing and the day after sentencing.  The difference in degree is not significant.  What *is* significant is the fact that Hammons did not deny in his Affidavit that counsel sent him the July 16, 2009, letter or deny that he received it.  In the absence of any evidence to the contrary, the Court must assume that Hammons received the letter.  Nevertheless, Hammons does not state that he directed counsel to file a notice of appeal (or confirmed a prior directive) after receiving the letter. Accordingly, the Court finds that Hammons ultimately did not instruct counsel to file a notice of appeal after receiving the letter which clearly called for a response.

The Government takes the view that Hammons did not instruct counsel to file a notice of appeal, as the Court has found, and that *Flores-Ortega* governs.  Under *Flores-Ortega*, where a defendant does not direct counsel to file a notice of appeal, a court must first determine if counsel consulted with the defendant regarding an appeal and, if not, then determine whether counsel had reason to believe that a rational defendant would

want to appeal or that the particular defendant demonstrated a desire to appeal.  *Flores-Ortega*, 528 U.S. at 480.  Whether or not there was an appellate waiver is a factor to be considered when determining whether a rational defendant would want to appeal.  Here, however, it is not necessary to make that determination because counsel *did* consult with Hammons regarding problems attendant to appealing despite the waiver.  Therefore, the Court concurs with the Government's conclusion that counsel's performance was not constitutionally deficient.

The Court views the circumstances in this case as more akin to the circumstances in *Sandoval-Lopez* which addressed the situation where a defendant alleged that counsel failed to file a notice of appeal despite his clear instructions to do so.  In this scenario, whether there is an appellate waiver in the Plea Agreement is irrelevant.  Indeed, there was a "solid waiver" in *Sandoval-Lopez*.

In *Sandoval-Lopez*, the Ninth Circuit held that counsel's failure to file a notice of appeal despite a defendant's instruction to do so constitutes deficient performance, and the lost opportunity to appeal constitutes prejudice.  *Sandoval-Lopez*, 409 F.3d at 1196-98.  Noting that Sandoval-Lopez's appeal would "most probably have been dismissed because it had been waived" and that if he had a new trial on the original indictment he would likely receive a much longer sentence than his attorney negotiated, the court stated that "he was probably lucky to have a lawyer who exercised such wise judgment" by not appealing.  *Id*. at 1198.  The court continued, "[b]ut even though no one would think a

**MEMORANDUM DECISION AND ORDER - 25**

doctor incompetent for refusing to perform unwise and dangerous surgery, the law is that 'a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.'" *Id*.  Finally, it noted that requiring counsel to file a requested notice of appeal "may amount to saying 'it is ineffective assistance of counsel to refuse to file a notice of appeal when your client tells you to, even if doing so would be contrary to the plea agreement and harmful to your client,' but that is the law on filing a notice of appeal." *Id*.

Based on *Sandoval-Lopez*, if the Court were to find that Hammons directed counsel *after* receiving counsel's July 16, 2009, letter to file a notice of appeal, then it would grant the § 2255 Motion without regard to the waiver and restart the time for filing a notice of appeal.  However, Hammons did not so allege in his responsive Affidavit. Counsel's Affidavit stands unrebutted in its most significant respects. Accordingly, the Court will dismiss the § 2255 Motion.

## CONCLUSION

As the Court stated at sentencing, Hammons got a "tremendous benefit" from the Plea Agreement.  *Sent. Tr.* at 54.  The Court noted that in particular the benefit of the Government's allowing him to plead guilty to a charge with a five-year maximum.  *Id*. Indeed, two of the other charges carried statutory minimums of twenty and ten years, respectively, and one carried a twenty-year maximum.  *See Second Superseding Indictment*, Counts 1, 2, and 3. The Court concluded that counsel "did an excellent job in

representing you and although this was a difficult, hard-fought, and perhaps contentious, I think the government still was true to their word and you still received a tremendously beneficial plea agreement and a sentence that could have been much worse." *Sent. Tr.* at 54-55. Under the circumstances, like the court in *Sandoval-Lopez*, this Court would seriously question the wisdom of appealing. However, it is not up to the Court to consider that question. It must only determine whether Hammons told counsel to appeal.[5] The Court finds that despite his interest in appealing, Hammons did not ultimately direct counsel to do so.

Finally, although it did not factor into its decision, the Court notes that while Hammons argues emphatically that he wanted to appeal, that he directed counsel to appeal, and that he consulted a second attorney regarding an appeal, he waited eleven months to file his § 2255 Motion. While the Motion was timely, it is certainly not suggestive of someone who adamantly wanted to appeal and instructed his counsel to do so.

## CERTIFICATE OF APPEALABILITY

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a movant has made "a

---

[5] Although not determinative, that Mr. Arkoosh suggested that Hammons consult with another attorney, that Hammons did so, and that the other attorney reached the same conclusion regarding the appeal lends credence to Mr. Arkoosh's position that Hammons did not ultimately direct him to file a notice of appeal.

**MEMORANDUM DECISION AND ORDER - 27**

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this standard when the court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, the movant must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right.  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).[6]  When the court has denied a § 2255 motion or claims within the motion on the merits, the movant must show that reasonable jurists would find the court's decision on the merits to be debatable or wrong.  *Slack,* 529 U.S. at 484; *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

After carefully considering the record and the relevant case law, the Court finds that reasonable jurists would not find the Court's determination that counsel's performance was not constitutionally deficient to be debatable or wrong.  Accordingly, a certificate of appealability will not issue.

## ORDER

**IT IS ORDERED:**

1.     Dennis Bruce Hammon's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 1) is **DENIED** and **DISMISSED** in its entirety.

---

[6]  The requirements for a certificate of appealability for a § 2255 appeal do not appear to differ from the requirements for a certificate of appealability for a § 2254 habeas petition related to a state conviction.  *See United States v. Asrar*, 116 F.3d 1268 (9th Cir. 1997).  Therefore, cases addressing the requirements in the context of a § 2254 proceeding are pertinent to a § 2255 proceeding as well.

**MEMORANDUM DECISION AND ORDER - 28**

2.      No certificate of appealability shall issue.  Hammons is advised that he may

        still request a certificate of appealability from the Ninth Circuit Court of

        Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local

        Ninth Circuit Rule 22-1.  To do so, he must file a timely notice of appeal.

5.      If Hammons files a timely notice of appeal, and not until such time, the

        Clerk of Court shall forward a copy of the notice of appeal, together with

        this Order, to the Ninth Circuit Court of Appeals.  The district court's file in

        this case is available for review online at www.id.uscourts.gov.

DATED:  **September 24, 2013**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 29**